**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLORADO**
**Judge William J. Martínez**

Civil Action No. 26-cv-5489-WJM

OVED GOMEZ GUZMAN,

Petitioner,

v.

JUAN BALTAZAR, in his official capacity as Warden of the Denver Contract Detention Facility, *et al*.

Respondents.

---

**ORDER GRANTING PETITION FOR WRIT OF HABEAS CORPUS**

---

Before the Court is Petitioner Oved Gomez Guzman's Petition for Writ of Habeas Corpus, brought pursuant to 28 U.S.C. § 2241 ("Petition") (ECF No. 1), and Emergency Motion to Enforce and for Order Directing Immediate Release and to Enjoin Respondents from Re-Arresting and Re-Detaining Petitioner ("Motion") (ECF No. 9). Respondents Juan Baltazar, in his official capacity as Warden of the Denver Contract Detention Facility; George Valdez, in his official capacity as Denver Field Office Director for U.S. Immigration and Customs Enforcement ("ICE"); Markwayne Mullin, in his official capacity as Secretary of U.S. Department of Homeland Security ("DHS"); David J. Venturella, in his official capacity as Senior Official of ICE; Todd Blanche, in his official capacity as U.S. Attorney General; and Sirce E. Owen, in her official capacity as Acting Director of the Executive Office for Immigration Review ("EOIR") (collectively, "Respondents" or the "Government") filed a cursory response. (ECF No. 8.)

For the following reasons, the Court grants the Petition.

## I. BACKGROUND

This case presents an all-too-familiar fact pattern. Gomez Guzman is a native and citizen of Mexico. (ECF No. 1 at ¶ 12.) Prior to his arrest and detention, he was a resident of Danbury, Connecticut, where he lived for more than twenty years. (*Id.*) He has worked as a landscaper in and around Danbury for many years. (*Id.*) He has a ten-year-old U.S. citizen daughter who also resides in Danbury and who depends on him for her support and care. (*Id.*) Gomez Guzman has no record of criminal conduct. (*Id.* at ¶ 26.)

On or about August 24, 2026, while Gomez Guzman was in his truck on his way to work, ICE detained him. (*Id.* at ¶¶ 20–21.) Gomez Guzman contends that he was not served with a warrant at any time during or after his arrest. (*Id.* at ¶¶ 2–3, 21, 23.) Nor did he receive a notice to appear until *after* he was arrested and detained. (*Id.* at ¶¶ 1, 71.) He was taken to Massachusetts, and held overnight, after which he was transferred to the Denver Contract Detention Center in Aurora, Colorado. (*Id.* at ¶ 24.)

## II. LEGAL STANDARD

"Challenges to immigration detention are properly brought directly through habeas." *Soberanes v. Comfort*, 388 F.3d 1305, 1310 (10th Cir. 2004.) More specifically, 28 U.S.C. § 2241 "confers jurisdiction upon the federal courts to hear [such cases." *Zadvydas v. Davis*, 533 U.S. 678, 687 (2001) (citing 28 U.S.C. § 2241(c)(3) (authorizing any person to claim in federal court that they are being held "in custody in violation of the Constitution or laws . . . of the United States")). "The fundamental purpose of a § 2241 habeas proceeding is the same as that of § 2254 habeas and § 2255 proceedings: they are an 'attack by a person in custody upon the legality of that

custody, and . . . the traditional function of the writ is to secure release from illegal custody.' " *McIntosh v. U.S. Parole Comm'n*, 115 F.3d 809, 811 (10th Cir. 1997) (quoting *Preiser v. Rodriguez*, 411 U.S. 475, 484 (1973)).

## III. ANALYSIS

Gomez Guzman challenges the legality of the detention, alleging that: (1) his continued detention lacks the fair custody redetermination required by the Fifth Amendment (Count One); (2) the delay between his arrest and the filing of his charging document violated the Administrative Procedure Act (Count Three); and (3) that his arrest and detention violated the relevant Immigration and Nationality Act ("INA") provisions and implementing regulations (Counts Two, Four, Five, Six, and Seven) and (for Counts Four and Five) the Fourth Amendment. The Court need only reach the statutory merits of Counts Two, Four, and Five to resolve the Petition.

### A. INA Violations

Gomez Guzman alleges that Respondents arrested and detained him without a warrant, as required under 8 U.S.C. § 1226(a), and did not issue a notice to appear until *after* his arrest (Counts Two and Four). (ECF No. 1 at ¶¶ 1–2, 68–69.) Likewise, he alleges that Respondents failed to establish a lawful basis for a warrantless arrest under 8 U.S.C. § 1357(a)(2) (Count Five). (*Id*. at ¶¶ 77–78 26–27.) Counts Four and Five also contain Fourth Amendment challenges. (*Id* at ¶¶ 74, 79.) Having concluded that Respondents violated 8 U.S.C. §§ 1226(a) and 1357(a)(2), along with the relevant implementing regulations, the Court does not reach Gomez Guzman's contentions as to the Fourth Amendment. *See United States v. Hardman*, 297 F.3d 1116, 1124 (10th Cir. 2002) ("[I]t is well-settled that federal courts should avoid deciding constitutional issues when statutory issues are dispositive.")

1. <u>§ 1226(a)</u>

Gomez Guzman contends that his arrest violated § 1226(a) and 8 C.F.R § 236.1(b)(1). The Court agrees.

"§ 1226(a) authorizes arrest and detention only '[o]n a warrant issued by the Attorney General.' " *Limon Soto v. Valdez*, 2026 WL 2664193, at *2 (D. Colo. Sept. 10, 2026) (quoting 8 U.S.C. § 1226(a)). Thus, "[i]ssuance of a warrant is a necessary condition to justify discretionary detention under section 1226(a). . . . As such, it follows that absent a warrant a noncitizen may *not* be arrested and detained under section 1226(a)." *Chogllo Chafla v. Scott*, 804 F. Supp. 3d 247, 264 (D. Me. 2025) (emphasis in original); *see Limon Soto*, 2026 WL 2664193, at *2 (same).

Here, Respondents' detention of Gomez Guzman violates § 1226. Respondents failed to obtain an administrative warrant before detaining Gomez Guzman. (*Id.* at ¶¶ 2–3, 21, 23.) As explained above, Respondents do not point to the existence of any administrative warrant, nor do they even attempt to justify the warrantless arrest. In a similar case, Judge Philip A. Brimmer of this District also concluded that "given petitioner's unrefuted claim that the Notice to Appear was not issued until after petitioner's arrest, the Court finds that the Form I-200 warrant was invalid. Therefore, petitioner was not arrested pursuant to a valid warrant, in contravention of 8 U.S.C. § 1226(a)." *Martinez-Salamanca v. Baltazar*, 2026 WL 2083209, at *3 (D. Colo. July 20, 2026). Likewise, Respondents failed to issue a Notice to Appear until two days after detaining Gomez Guzman and never produced an administrative warrant to justify the arrest.

Similarly, 8 C.F.R. § 236.1(b)(1) provides that "*[a]t the time of issuance of the notice to appear*, . . . the [noncitizen] may be arrested and taken into custody under the

authority of Form I-200, Warrant of Arrest." (emphasis added). As such, a noncitizen cannot be arrested and detained without a Notice to Appear being issued first. The events in this case occurred in the reverse order.

The Court therefore concludes that Gomez Guzman's detention violates 8 U.S.C. § 1226(a) and 8 C.F.R. § 236.1(b)(1).

2. § 1357(a)

Gomez Guzman also argues that Respondents arrested him without asserting, much less documenting, that any officer had reason to believe he was likely to escape, in violation of § 1357(a). (ECF No. 1 at ¶¶ 76–78.) § 1357(a)(2) requires a pre-arrest basis to believe Petitioner was likely to escape before a warrant could be obtained. (ECF No. 1 at ¶ 76.) Nothing in the record indicates that Gomez Guzman received any such determination, let alone from a neutral decision maker. Thus, that Respondents have violated their own regulations is manifestly clear. *See* 8 U.S.C. § 1357(a)(2) (allowing an ICE officer to make warrantless arrests of noncitizens "*if he has reason to believe* that the alien so arrested is in the United States in violation of any such law or regulation and is likely to escape before a warrant can be obtained for his arrest.") (emphasis added); 8 C.F.R. § 287.8(c)(ii) (ICE officer must obtain arrest warrant "except when the designated immigration officer has reason to believe that the person is likely to escape before a warrant can be obtained."). "[C]ourts across the country routinely hold that (1) ICE violating its own regulations in detaining an individual is a due process violation, and (2) this violation makes the detention unlawful and the proper remedy is release." *Izquierdo Navarro v. Bondi*, 2026 WL 468582, at *3 (D. Colo. Feb. 18, 2026) (collecting cases). The Court makes that same conclusion here.

Respondents have failed to provide any argument explaining how they satisfied

the requirements under §1357(a)(2). Indeed, "[f]or purposes of this specific case, Respondents are not submitting a brief in opposition to the Petition detailing the facts and circumstances of this case." (ECF No. 8 at 1.)

In sum, "[t]he Government has offered neither a justification nor a formal process for the deprivation of Petitioner's protected liberty interest." *Sosa v. De Anda-Ybarra*, 2026 WL 1453999, at *2 (D.N.M. May 22, 2026). Together, these wrongs constitute violations of the INA.

**B. Remedy**

The Government declined to substantively address Gomez Guzman's claims. (ECF No. 8.) It even concedes that "the appropriate relief would be an Order directing that Respondents, within seven days of this Court's Order, <u>release</u> Petitioner from detention." (*Id.* (emphasis in original).) Gomez Guzman requests immediate release. (ECF No. 1 at ¶¶ 25, 48, 55.)

In the Court's view, only immediate release, and not a bond hearing, will suffice. This Court has already written of its "concern[] that the immigration courts are not affording immigrants fair bond hearings," as "the mounting evidence that bond determination hearings conducted in Immigration Court under § 1226(a) have preordained outcomes has become impossible to ignore." *Pal v. Lyons,* 2026 WL 937962, at *4 (D. Colo. Apr. 7, 2026); *see also Quiroz Zacarias v. Mullin,* 2026 WL 1092162, at *4–*5 (D. Colo. Apr. 22, 2026) (concluding "the IJ deprived [petitioner] of his due process rights" by issuing a bond decision that was "wholly bereft of any analysis whatsoever"). Indeed, courts across the country have, with increasing frequency, ceased "order[ing] even initial bond hearings in cases like this one involving unlawful detention under § 1225(b) because Respondents' conduct can no longer be

attributed to mere negligence or ineptitude, . . . and doing so would effectively allow the Government to transform an unlawful detention into a lawful one through *post-hoc* justifications." *Zheng v. Rokosky,* 826 F. Supp. 3d 545, 563 (D.N.J. 2026) (collecting cases).

Given this reality, the Court will order Gomez Guzman's immediate release.

## IV. CONCLUSION

For all these reasons, the Court ORDERS as follows:

1. The Court's Order to Show Cause (ECF No. 4) is MADE ABSOLUTE and Gomez Guzman's Petition (ECF No. 1) is GRANTED;

2. The Court GRANTS this relief to Gomez Guzman pursuant to Counts Two, Four, and Five and does not reach the merits of Counts One, Three, Six, or Seven;

3. The Motion (ECF No. 9) is DENIED AS MOOT;

4. **By no later than tomorrow, November 7, 2026**, Respondents shall IMMEDIATELY RELEASE Gomez Guzman on his own recognizance, along with all his personal belongings, and they shall facilitate his transportation from the detention facility by providing all necessary identity and travel documents to return to his primary address;

5. **No onerous conditions of release shall be unilaterally imposed by Respondents on** Gomez Guzman, including without limitation mandating that he wear GPS monitoring, submit to mandatory reporting, or have his movements otherwise restricted;

6. Respondents are ENJOINED from re-arresting or re-detaining Gomez

Guzman unless they demonstrate, by clear and convincing evidence at a pre-deprivation bond hearing before a neutral decisionmaker, that he is a flight risk or danger to the community such that his physical custody is legally justified. At any such bond hearing, Respondents shall bear the burden of proof, and Gomez Guzman shall be allowed to have counsel present. This injunction shall remain in effect until such time as this Court, or the Tenth Circuit Court of Appeals, vacates this Order;

7. During such periods of time as Gomez Guzman is in Respondents' custody, they shall continue to be ENJOINED from removing, transferring, or causing the removal or transfer of, Petitioner from the District of Colorado until such time as this Court, or the Tenth Circuit Court of Appeals, vacates this Order;

8. Should Gomez Guzman believe he has a good faith basis to seek attorney's fees pursuant to the Equal Access to Justice Act, he is GRANTED leave to file a motion seeking the same, along with all supporting documentation, by no later than **December 4, 2026**. Respondents shall file a response by no later than **December 28, 2026**, and Gomez Guzman shall file a reply by no later than **January 11, 2027**; and

9. Judgment shall enter in Gomez Guzman's favor and against Respondents on **November 20, 2026,** UNLESS prior thereto the Court is informed that Respondents have failed to fully and timely comply with the terms of this Order.

Dated this 6th day of November, 2026.

BY THE COURT:

______________________________
William J. Martinez
Senior United States District Judge